UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Cody Linville, | ) | |
|         Plaintiff | ) | |
| | ) | |
| | ) | Case No. 05-4058 |
| | ) | |
| Ronald Lindbom, | ) | |
|         Defendant | ) | |

**ORDER**

Now before the court is defendant's Motion to Bar ( #32) plaintiff's expert witness[1]. The motion is fully briefed and I have carefully considered the arguments of the parties. For the following reasons, the motion is granted in part and denied in part.

**APPLICABLE LAW**

Fed.R.Evid. 704(a) provides in pertinent part that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a)(2006). The Advisory Committee Notes caution, however, that "abolition of the ultimate issue rule does not lower the bar so as to admit all opinions." Rather, the limitations of Rules 701, 702 and 403 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." Fed.R.Evid. 704 Advisory Committee's Notes (2006). In other words, when an expert offers an opinion on an ultimate issue, the admissibility of that opinion is governed by the concerns underscoring those rules.

---

[1] The title of the motion is indeed a "motion to bar." However, the substance of the motion indicates that defendant seeks not to bar the expert's testimony in its entirety but rather only as to two of the expert's opinions. Defendant expressly states that it "does not dispute" the expert's qualifications in the filed of professional engineering.

The admissibility of expert opinion testimony is governed by Fed.R.Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles reliably to the facts of the case.

Fed.R.Evid. 702 (2006).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, (1993), the Supreme Court directed District Courts to serve as "gatekeepers," analyzing proposed expert opinions and admitting only expert testimony that meets the standards of Rule 702. Daubert, 509 U.S. 579. See also, Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999); Fuesting v. Zimmer, Inc., 421 F.3d 528, 534 (7th Cir.2005). The gatekeeper function requires the judge to assess the proffered expert opinion in order to ensure its reliability and relevancy before allowing the testimony to be admitted. Kumho Tire, 526 U.S. at 147. See also, Naeem v. McKesson Drug Co., 444 F.3d 593, 607 (7th Cir. 2006); Clark v. Takata Corp., 192 F.3d 750, 759 n.5 (7th Cir. 1999).

The Daubert Court set forth the following, non-exhaustive list of "guideposts" to assist in the determination of reliability and relevance: (1) whether the scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error when applied; and (4) whether the theory has been "generally accepted" in the scientific community. 509 U.S. at 593-94; see also Chapman v. Maytag Corp., 297 F.3d 682, 687 (7th Cir.2002).

In addition to these factors, the 2000 Advisory Committee's Notes to Rule 702 suggest other relevant factors, including: (5) whether "maintenance standards and

controls" exist; (6) whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or developed "expressly for purposes of testifying"; (7) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (8) "[w]hether the expert has adequately accounted for obvious alternative explanations"; (9) "[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and (10) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." Fed.R.Evid. 702 Advisory Committee's Note (2000 Amends.).

## DISCUSSION

This case arose out of an accident that occurred when plaintiff was trying to clear a clog in a piece of farm machinery. Plaintiff has disclosed as his expert an engineer, Kevin Sevart. Sevart has a Bachelor's degree in Mechanical Engineering and has been licensed and practicing as a Professional Engineer since 1990. He is a member of the American Society of Agricultural Engineers. He has designed and tested machine components and safety systems that have gone into production. He has testified 10-15 times in other litigation.

Sevart has proffered a number of opinions, two of which are the subject of this motion. These two opinions are:

(1) Cody Linville was not working in an unreasonable manner in his efforts to clear the clog that he encountered; and
(2) The accident was foreseeable, and Cody Linville was working in a foreseeable manner.

Sevart stated in his report that these opinions are based on "reasonable recognized design engineering, manufacturing, safety and human factors principles, as

well as on [his] education, training and experience." Specifically, Sevart referenced his:

> knowledge of the agricultural equipment industry; knowledge of previous injury/accident investigations; knowledge of machine design and human factors considerations; accidents on similar equipment, as well as his understanding of [the] accident.

In the pending motion, defendant argues that these opinions are ultimate legal conclusions not appropriate for expert opinion testimony; and that Sevart's testimony is unreliable to the extent it is based on "human factors considerations," because he lacks adequate qualifications in that field.

Defendant relies on Owen v. Kerr-McGee Corp., 698 F.2d 236, 237 (5th Cir. 1983) for the proposition that Sevart's opinions on the "ultimate issues" in this case should be barred. In Owen, defendant asked its expert if he had "any opinion as to the cause of the accident." The trial court sustained the objection because the question went to the ultimate issue in the case. On appeal, the Fifth Circuit acknowledged that Rule 704 abolished the per se rule against admitting testimony on ultimate issues. Relying on the Advisory Committee Notes, however, the Court went on to affirm the trial court, noting the distinction between factual and legal causation. Because the expert's conclusion went to legal causation, it was impermissible because it "would merely allow the witness to tell the jury what result to reach."

In the Advisory Committee Notes, the Committee gave an example to demonstrate the distinction between a permissible opinion and one designed to tell the jury what result to reach. The question "Did T have the capacity to make a will?" is not permissible, while the question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

In the case before the court, the jury will be instructed that one of the issues on which defendant bears the burden of proof is the plaintiff's own negligence. IPI B21.02. Plaintiff's contributory negligence will be defined as "negligence on the party of the plaintiff that proximately contributed to cause the alleged injury." IPI 11.01. A jury will be told that it was the plaintiff's duty to exercise "ordinary care for his own safety" and that he was contributorily negligent if he failed to use ordinary care. "Negligence" is defined as "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do under circumstances similar to those shown by the evidence." IPI 10.01. "Ordinary care" is defined as "the care a reasonably careful person would use under circumstances similar to those shown by the evidence." IPI 10.02. Both of the latter instructions explicitly direct the jury that "the law does not say how a reasonably careful person would act under those circumstances. That is for you to decide."

This discussion of jury instructions demonstrates how a conclusion about the "reasonableness" of plaintiff's conduct is one only the jury can draw. Certainly the expert can testify about facts: it will be helpful to the jury to understand how the machinery worked and what safety precautions were generally necessary, for example. Given Sevart's qualifications, there is no bar to such testimony.

But it is the jury that must conclude whether plaintiff's conduct was reasonable (or not unreasonable, if you prefer the double negative used by Mr. Sevart). By testifying that the plaintiff was not unreasonable, the expert is telling the jury what result to reach rather than simply assisting them in reaching a decision.

The word "foreseeable" is somewhat more problematic. It appears nowhere in

the Illinois Pattern Instructions on negligence.  It is instead a fundamental underpinning of the law of proximate causation.

The IPI definition of "proximate cause" instructs the jury that proximate cause is "any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause.  It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."  IPI 15.01.  The phrase "in natural or probable sequence" implicitly includes the concept of foreseeability.

Does that make the conclusion inadmissible?  A Seventh Circuit case discussing Owen, supra, provides significant guidance.  In Miksis v. Howard, 106 F.3d 764, 762 (7th Cir. 1997), the Seventh Circuit criticized the defendants' reliance on Owen for the proposition that testimony as to causation was always an impermissible (i.e. inadmissible) legal conclusion.  The Miksis Court noted that Owen had distinguished between "factual" and "legal" causation:  there was no dispute in Owen as to the factual cause of the accident, so any inquiry about causation must have been an inquiry as to "legal causation," which was according to the Owen court, impermissible.  In Miksis, there was a dispute of fact about whether the driver was fatigued and whether that fatigue could have caused the accident.  The District Court's decision to allow the opinion testimony was therefore not an abuse of discretion and was affirmed.

Just as Owen cannot be read as a total prohibition of testimony about causation, neither can Miksis be read as absolute permission for such testimony.  These two cases read together require the court to determine what type of causation, legal or factual, is at issue.

Here, there is no dispute about the factual cause of plaintiff's injury: he put his hand into a piece of farm equipment to remove a clog. Whether that act was "foreseeable" goes directly and only to the issue of proximate (i.e. legal) causation. Just as the testimony was impermissible in Owen, it is impermissible here. While there may be facts that the expert can bring to the trial that will play a part in the jury's determination of legal causation - such as those discussed at length in the plaintiff's response to this motion - the expert may not offer a conclusion about the foreseeability of this accident, using that word or any variant thereof.

Defendant next challenges Sevart's qualifications to testify about "human factors considerations." The Seventh Circuit has described human factors analysis as focusing "on the interaction between human behavior and the design of a machine [or] product ... An expert engaging in such an analysis will consider whether, in light of predictable human behavior, the design or condition of the subject item poses a potential hazard." Mihailovich v. Laatsch, 359 F.3d 892, 915 (7th Cir.2004), citing Richard J. Kholmn, Using the Human Factors Expert in Civil Litigation, 40 AM. JUR. TRIALS 629 §§ 1-2.

The Kholmn article explains that "human factors" is a "multi-disciplinary study," primarily involving engineering and psychology. Id. at § 2. It is "primarily devoted to the interaction between humans and their machines." Kholmn at § 1. In various contexts, "human factors" has also been referred to a human engineering, ergonomics, biotechnology, engineering psychology, biomechanics, among others. Id.

Sevart testified that human factors entered into his conclusion that Linville was not working in an unreasonable manner. Sevart stated that this opinion was based "upon the expected behavior of other people in [Linville's] capacity" and that it was his

"experience" that Linville's act "would be a manner in which farm workers would work to clear, you know, machinery malfunctions such as he experienced." Sevart testified that his knowledge about human factors considerations were based on his review of literature about the tasks involved in agriculture and about the influence of the work environment on those tasks, as well as data about body dimensions.

Applying the specific requirements of Rule 704, I find no problem with Sevart's qualifications to utilize human factors in his opinions. First, there is no question that human factors generally are a body of academia with principles and methodology that have been tested and reviewed. The Kholmn article referenced above lists numerous recognized university programs for the study of human factors, noting that there are over fifty graduate-level programs at North American universities (including the University of Illinois, among numerous other State universities, as well as private schools such as Cornell, Tufts, and Renssalaer Polytechnic, to name just a few). Id. at § 27. This is not "junk science" and those factors designed to root out such unreliable opinion testimony do not apply to this case.

Second, Sevart may lack formal education in this specific field. However, neither Rule 704 nor Daubert require formal education. The Rule requires knowledge, skill, experience, training, or education. Given Sevart's formal and unquestioned engineering education and his extensive engineering experience in the area of agricultural equipment and given his involvement with the design of safety systems, his review of the literature in this related field suffices to establish the requisite skill, experience and training. His lack of formal education in the area does not make his testimony unreliable. If anything, it relates to the weight the jury should accord his testimony. The

extent to which it adds - or detracts - from his opinion is a matter that is properly the subject of examination. It is not a basis for exclusion of the entire opinion.

Finally I note that expert witnesses routinely - indeed, wisely - rely on literature in their field. Given the intellectual overlap between engineering and human factors, I see nothing unusual in Sevart's reliance on literature in reaching his conclusion. If the literature on which he relies is subject to question, that matter has not been brought to the court's attention, and the list of publications appears to be well within the range of the types of publications appropriate for reliance. There is nothing in the Rule or the case law that prohibits such reliance, at least not under the circumstances presented here.

Sevart's opinion as a whole is neither speculative nor unsupported, and he is qualified to render the opinion and support it with appropriate reference to human factors. To the extent that defendant has identified weaknesses, they are weaknesses subject to vigorous cross examination and presentation of contrary expert testimony. The identified weaknesses do not bar the use of human factors in supporting his opinion.

## CONCLUSION

Accordingly, the motion to bar (#32) is granted in part and denied in part, as follows. The precise statement that plaintiff was acting reasonably or any variant thereof will not be allowed. The expert's conclusion of foreseeability is similarly inadmissible. Testimony about facts - either from this case or from the experience, training, and education of the expert - relevant to reasonableness or foreseeability, however, are admissible. To the extent previously disclosed in his report and

deposition, Sevart may utilize human factors to explain his opinions.

ENTER this 6th day of November 2006.

                              s/ John A. Gorman

                              JOHN A. GORMAN
                UNITED STATES MAGISTRATE JUDGE